Robert PEARSON, et al., Appellants,

v.

UNITED STATES, Appellee.

Nos. 88–957, 88–1021, 88–1023, 88–1024, 88–1026, 88–1027 and 88–1029 to 88–1031.

District of Columbia Court of Appeals.

Argued June 6, 1990.

Decided Oct. 4, 1990.

---

expression in a public forum, the Supreme Court plaza. Alternatively, they contend that, notwithstanding the trial judge's narrowing constructions, the statute and regulation are unconstitutionally overbroad and vague. We affirm.

Gene C. Schaerr, with whom Richard Swick, Washington, D.C., was on the brief, for appellants.

John D. Bates, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and W. Mark Nebeker and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and NEWMAN and TERRY, Associate Judges.

ROGERS, Chief Judge:

Appellants appeal their convictions of parading and assemblage on Supreme Court grounds, 40 U.S.C. § 13k (1988), and unlawful entry, 40 U.S.C. § 13e (1988) and Regulation Two, promulgated pursuant to 40 U.S.C. § 13*l* (1988), on the ground that the statute and the regulation are not narrowly tailored to support the government's interests and violated their First Amendment rights by impermissibly prohibiting

I

The essential facts are undisputed. In January 1988, appellants were among approximately fifty thousand people who participated in an annual anti-abortion march from the Ellipse in Washington, D.C. to the Supreme Court of the United States to protest the Court's decision in *Roe v. Wade.*[1] In anticipation of the march, the Marshal of the Supreme Court, acting pursuant to Regulation Two, closed certain areas of the Supreme Court grounds, including the plaza and main steps, between 1 p.m. and 6 p.m. on January 22, 1988, to all persons except the press.[2] Notice of the closure was posted at least twenty-four hours in advance of the march and barricades were placed at the top of the stairs leading to the Supreme Court plaza. Despite the plaza's closure, appellants approached the barricades in groups of two to seven people. They were advised by officers at the Court that if they entered the plaza area, they would be subject to arrest.[3] Appellants still entered the plaza

1. 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

2. Regulation Two, promulgated on October 8, 1987, pursuant to 40 U.S.C. § 13n (1988), provides:

In order to protect the Supreme Court building and grounds, to protect the persons and property therein, or to maintain suitable order and decorum, the Marshal of the Supreme Court, pursuant to his responsibilities outlined in 40 U.S.C. 13*l*, may, at any time, declare the Supreme Court building and grounds, or any portion thereof, closed to the general public. Any person who, having been informed of the closure of the building or grounds, or portions of the building or grounds, enters the closed areas without authorization of the Marshal or refuses to leave the closed areas after being requested to do so, shall be subject to arrest and subject to penalties set forth in 40 U.S.C. § 13m.

40 U.S.C. § 13m provides:

Whoever violates any provision of section 13g to 13k of this title, or of any regulation

prescribed under § 13*l* of this title, shall be fined not more than $100 or imprisoned not more than sixty days, or both, prosecution for such offenses to be had in the Superior Court of the District of Columbia, upon information by the United States Attorney or any of his assistants: *Provided,* That in any case where, in the commission of any such offense, public property is damaged in an amount exceeding $100, the period of imprisonment for the offense may be not more than five years.

Section 13*l*(a) provides that "[i]n addition to the restrictions and requirements specified in sections 13g to 13k of this title, the Marshal of the Supreme Court may prescribe such regulations ... as may be deemed necessary for the adequate protection of the Supreme Court Building and grounds and of persons and property therein, and for the maintenance of suitable order and decorum within the Supreme Court Building and grounds."

3. Appellant Williams did not agree that warnings were given as he passed the barricade, but did admit he heard subsequent warnings. Ap-

and knelt down in prayer.[4] They were informed twice that they were violating the law and were requested to disperse. When appellants refused to leave, they were arrested for parading and Assemblage on Supreme Court grounds and unlawful entry.[5] At the time of their arrests there were about thirty people, including appellants, on the plaza.

The trial judge denied appellants' motion to dismiss the charges. He rejected appellants' contention that the Supreme Court plaza is a public forum either by tradition or designation, and concluded that the relatively recent practice, according to appellants, of media interviews of counsel and news conferences held on the plaza did not create a tradition. Noting the unique function of the Supreme Court, the judge observed that by enactment of section 13k and Regulation Two the government has, in effect, designated the plaza as a nonpublic forum. Each, the judge ruled, was a content neutral and reasonable method of serving substantial government interests. Alternatively, citing *United States v. Wall*, 521 A.2d 1140, 1144 (D.C.1987), the judge ruled that section 13k, as well as Regulation Two, which was not before the court in *Wall*, were narrowly drawn and served a significant government interest even under the more stringent public forum standard. Finally, the judge rejected appellants' claim that the statute and regulation were unconstitutionally overbroad because each was susceptible to a constitutionally sound limiting construction. The judge construed the statute as limited to providing for protection of the Supreme Court building and grounds, and persons and property therein,

and the maintenance of proper order and decorum, and Regulation Two as limited by its expressly stated purpose. Declining to rule on the vagueness claim, since appellants' conduct fell within the narrowed scope of the statute and regulation, the judge nonetheless concluded that the statute and regulation, in light of their purposes, were clear and definite.

## II

In *Wall*, this court, upon applying the different standards for reviewing statutes which regulate First Amendment speech depending on the character of the property at issue, rejected the same challenge to section 13k by anti-abortion demonstrators that is raised in the instant appeal. 521 A.2d at 1143–44 (citing *Perry Education Ass'n v. Perry Local Educator's Ass'n (Perry)*, 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983)). In *Wall*, as here, a small group of anti-abortion demonstrators went to the plaza area of the Supreme Court grounds and ascended the steps leading to the entrance to the Court building. When they did not retreat to the sidewalk area after being warned they otherwise would be arrested, but continued to kneel and pray, they were arrested. The trial court held that the plaza area was a public forum and application of section 13k to Wall's activity was unconstitutional. *Id.* at 1142. This court reversed, holding that the first clause of the statute [6] passed muster under both the standard applicable to nonpublic forums and the test applied to time, place and manner restrictions permissible in public forums.[7] *Id.* Accordingly, the

---

pellant Pearson's recollection was similar to that of appellant Williams.

**4.** Appellant Williams also carried a sign which read "The Gift of Life, God's Special Gift."

**5.** 40 U.S.C. § 13k provides:
It shall be unlawful to parade, stand, or move in processions or assemblages in the Supreme Court Building or grounds, or to display therein any flag, banner, or device designed or adapted to bring into public notice any party, organization or movement.
The unlawful entry charge was based on 40 U.S.C. § 13*l* and Regulation Two. See *supra* note 2.

**6.** The first clause of section 13*l* refers to "parade, stand or move in processions or assemblages in the Supreme Court Building or grounds." The second clause refers to "display therein any flag, banner, or device designed or adapted to bring into public notice any party, organization, or movement." *See United States v. Grace*, 461 U.S. 171, 175, 103 S.Ct. 1702, 1706, 75 L.Ed.2d 736 (1983) (clauses are severable); *Wall, supra*, 521 A.2d at 1142 n. 3.

**7.** The court did not decide whether the plaza and main entrance steps of the Supreme Court grounds are a public forum for First Amendment purposes. *Wall, supra*, 521 A.2d at 1142. The concurring opinion concluded that the ar-

only question in the instant appeal is whether, as appellants contend, the standard used by this court in *Wall* has been "vitiated by several subsequent Supreme Court decisions," all of which, they claim, firmly hold that a statute is not narrowly tailored merely because it is " 'not unrelated' to the means it is intended to serve." *See M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971) (a division of the court is bound by opinion of another division absent *en banc* review). Relying on *Ward v. Rock Against Racism*, —— U.S. ——, 109 S.Ct. 2746, 2758, 105 L.Ed.2d 661 (1989), *Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 2503, 101 L.Ed.2d 420 (1988), and *Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988), appellants maintain that section 13k and Regulation Two are " 'far broader' than necessary to achieve any legitimate governmental objectives" and consequently fail to meet the narrowly tailored standard.[8] To address this contention we first review the proper analytical framework.

### A.

■ The Supreme Court has classified properties into three categories for purposes of First Amendment speech analysis: the traditional public forum, the government-designated public forum, and the nonpublic forum. *Cornelius v. NAACP Legal Defense and Educational Fund, Inc. (Cornelius)*, 473 U.S. 788, 802, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985); *Perry, supra*, 460 U.S. at 45, 103 S.Ct. at 954. Where a property has a long tradition of devotion to assembly and debate, the rights of the government to restrict expressive activity are very limited.[9] *Perry, supra*, 460 U.S. at 45, 103 S.Ct. at 954. In a public forum, where the restriction on speech is content based, the government must show that its regulation is "necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Id.* (citing *Carey v. Brown*, 447 U.S. 455, 461, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980)). However, even in a public forum, the government may enforce reasonable content neutral time, place and manner regulations that are "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id.* at 45, 103 S.Ct. at 955.

■ The second category is public property which has been designated as a place for expressive activity by government action.[10] *Id.* As in a traditional public forum, content based restrictions must be narrowly drawn to effect a compelling state interest. *Id.* at 46, 103 S.Ct. at 955 (citing *Widmar v. Vincent, supra* note 6, 454 U.S. at 269–70, 102 S.Ct. at 274.) Content neutral restrictions must be reason-

eas comprise a nonpublic forum. *Id.* at 1145 (Ferren, J., concurring) (areas are " 'public property which is not by tradition or designation a form for public communication' ") (quoting *Perry, supra*, 460 U.S. at 46, 103 S.Ct. at 955).

8. Appellants' main argument, however, is that the trial court misread *Grace, supra*, 461 U.S. at 183, 103 S.Ct. at 1710. Appellants contend that because the Supreme Court in *Grace* held that section 13k's prohibitions did not sufficiently serve the government's purpose of restricting displays in order to sustain its validity when applied to displays on the public sidewalks on the perimeter of the Supreme Court grounds, "there is no basis for holding that Section 13k or Regulation Two is any more narrowly tailored to that objective when applied to a protestor on the plaza in front of the building." For reasons we discuss *infra*, this argument is meritless.

9. The most common examples of this "quintessential public forum" are parks and streets which have traditionally been used for the purposes of assembly and the communication of thoughts between citizens. *Perry, supra*, 460 U.S. at 45, 103 S.Ct. at 954.

10. Although these "designated public forums" were not originally designed as forums for speech, as long as the government retains "the open character of the facility," they are subject to the same standards as a traditional public forum. *Perry, supra*, 460 U.S. at 45–46, 103 S.Ct. at 954–56. *E.g. Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (university meeting facilities provided for use by student groups). *See also City of Madison Joint School District v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976) (school board meeting); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975) (municipal theater). The government "is not required to indefinitely retain the open character of the facility." *Perry, supra*, 460 U.S. at 46, 103 S.Ct. at 955.

able time, place and manner restrictions. *Id.* at 46, 103 S.Ct. at 955.

▮ Lastly, nonpublic forums are properties which are not forums for public communication or expression by tradition or designation. *Id.* Access to publicly owned property is not guaranteed by the First Amendment, *id.* (citing *United States Postal Service v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981)), and like any private property owner, the government has the right "to preserve the property under its control for the use to which it is lawfully dedicated." *Id.* In addition to reserving the non-public forum "for its intended purposes, communicative or otherwise," the government may also enforce time, place and manner restrictions as long as the regulation on speech is reasonable and not an effort to suppress the speaker's point of view. *Id.*

▮ Appellants contend that the Supreme Court plaza is a traditional public forum which has been devoted to assembly and debate. They maintain the plaza, as an unenclosed, accessible area immediately adjacent to an important government building, is physically and functionally similar to the public sidewalks surrounding that area, and the spacious public lawns and open areas surrounding the Capitol.[11] Consequently, appellants contend that the

government mistakenly advances factors in support of the constitutionality of the statute and regulation which are relevant only to a determination of a designated public forum, and not to the Supreme Court, a traditional public forum.

▮ Although we agree with appellants that the physical and functional attributes of a building may be relevant to a determination that a public property is a public forum, these attributes are properly significant only to the extent that they reflect the use and purpose of the property.[12] *See Grace, supra,* 461 U.S. at 178–80, 103 S.Ct. at 1707–09. As the government argues in its brief, the forum test should focus on whether the place has been devoted to assembly and debate, not whether the physical features of the Supreme Court are similar to other public forums, and appellants' assertion that the plaza has traditionally been used for public expression by the media, attorneys and others is unsupported in the record and in the law. Further, as the trial judge pointed out, "[e]ven the appearance that the U.S. Supreme Court bases its decisions on something other than the court record and oral argument ... tends to undermine public confidence in the integrity of the U.S. Supreme Court as an institution."

---

**11.** Appellants cite *Jeannette Rankin Brigade v. Chief of the Capitol Police (Jeannette Rankin Brigade)*, 342 F.Supp. 575 (D.D.C.) (three judge panel), *aff'd mem.,* 409 U.S. 972, 93 S.Ct. 311, 34 L.Ed.2d 236 (1972).

**12.** Indeed, cases cited by appellants support this proposition. Appellants contend the Supreme Court's summary affirmance of a case which held that the Capitol Grounds is a public forum necessarily leads to the conclusion that the Supreme Court is also a public forum. *See Jeannette Rankin Brigade, supra* note 11, 342 F.Supp. 575 (holding speech restriction on Capitol Grounds pursuant to 40 U.S.C. § 193g unconstitutional). In reaching this conclusion, appellants note that section 13k was modeled after 40 U.S.C. § 193g, and therefore urge that section 13k also unconstitutionally restricts speech. Contrary to appellant's characterization, however, in *Jeannette Rankin Brigade* the court looked to the purpose of the property and held that the Capitol Grounds is a public forum because it has traditionally been open to the pub-

lic; the primary purpose of the Capitol—legislating—is compatible with speech accessibility; and the expansive definition of Capitol Grounds unnecessarily included demonstrations not "'near' or 'in the immediate vicinity of' the Capitol itself." *Id.* at 584.

Similarly, appellants rely on a decision by the Fourth Circuit Court of Appeals that was recently reversed by the Supreme Court. In *United States v. Kokinda*, —— U.S. ——, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990), a plurality of the Court expressly contradicted the theory appellants posit. The Court held that a walkway leading from a United States Post Office to its parking lot was not a public forum in spite of its substantially similar appearance to a municipal sidewalk. *Id.* 110 S.Ct. at 3120–21. The purpose of the walkway, the plurality held, was postal business and it was not dedicated to public expression as is the municipal sidewalk. *Id.* 110 S.Ct. at 3121. The fifth justice, concurring, provides no solace to appellants. See *infra* note 15.

Traditional public forums have "immemorially been held in trust for the use of public and time out of mind, have been used for purposes of assemblage, communicating thoughts between citizens and discussing public questions." *Perry, supra,* 460 U.S. at 45, 103 S.Ct. at 955 (quoting *Hague v. CIO,* 307 U.S. 496, 515, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939)). Although the Supreme Court has traditionally been open to the public, that characteristic alone is insufficient to make it a public forum. *See Greer v. Spock,* 424 U.S. 828, 836, 96 S.Ct. 1211, 1216, 47 L.Ed.2d 505 (1976) (military base). In spite of a tradition of public access, appellants' contention that the Supreme Court building and grounds comprise a public forum is hardly consistent with the public forum test that such places "ha[ve] ... been traditionally held open for the use of the public for expressive activities." *Grace, supra,* 461 U.S. at 178, 103 S.Ct. at 1707. Nor is their contention, the effect of which would be to permit demonstrations on the Court's grounds, consistent with the Court's primary purpose and constitutional tradition as interpreted by the Court. *See id.* at 178, 182–83, 103 S.Ct. at 1707, 1709–10.

Judicial decisions addressing the issue of government interest in speech restrictions in and around courthouse grounds have universally recognized the tradition of constitutional and legislative safeguards which guard the integrity of the judicial process and free it from outside influence as well as the appearance of such influence.[13] *Cox v. Louisiana,* 379 U.S. 559, 562, 565, 85 S.Ct. 476, 479, 481, 13 L.Ed.2d 487 (1965). The government has a legitimate interest to guard against the appearance of impropriety: "Judges are human; and the legislature has the right to recognize the danger that some judges, ... and other court officials, will be consciously or unconsciously influenced by demonstrations in or near their courtrooms." *Id.* at 565, 85

S.Ct. at 481. *See also Grace, supra,* 461 U.S. at 182–83, 103 S.Ct. at 1709–10; *Jeannette Rankin Brigade, supra* note 11, 342 F.Supp. at 584. Even if, as appellants assert, the Court "regularly" permits the press and media to use the plaza and steps for reporting purposes, this practice does not compromise the non-public status of the Court and its grounds. At most, if such action created a "limited" public forum, the constitutional right of access would extend only to other activities of similar character. *Perry, supra,* 460 U.S. at 48, 103 S.Ct. at 956. Clearly appellants' demonstration activity is not of similar character to that of the media, attorneys, and others who use the Court's grounds for the limited purpose of disseminating information about and from the Court to the public.

Moreover, appellants' contention that restricting them to the sidewalks surrounding the Supreme Court grounds denies the effectiveness of their symbolic assertion that the Court's decisions sometimes blur the distinction between the legislature and the judiciary, is a hypothesis appellants seek to advance, not a statement of law. Appellants' belief that the most effective way to criticize the Court is to treat it like a legislature does not eliminate the tradition and importance of preserving the integrity of the judiciary.

■ Accordingly, the court in *Wall* held that section 13k's prohibition on processions and assemblages in the plaza area and main entrance steps of the Supreme Court met "the test imposed on the exclusion of speakers from non-public forums" as a reasonable and viewpoint neutral regulation of speech.[14] 521 A.2d at 1144. The court assessed the reasonableness of section 13k in light of the purpose of the forum and all the surrounding circumstances, *see Cornelius, supra,* 473 U.S. at

---

**13.** Contrary to appellants' assertions, the Supreme Court did not reject, but acknowledged, the distinction between the judiciary and the legislature in *Grace, supra,* 461 U.S. at 182–83, 103 S.Ct. at 1709–10. What the Court rejected was the distinction between the public sidewalks surrounding the Court and any other mu-

nicipal sidewalk. *Id.* at 179–80, 103 S.Ct. at 1708–09.

**14.** It isundisputed that the challenged statute and the regulation are content neutral. *See Perry, supra,* 460 U.S. at 46, 103 S.Ct. at 955.

809, 105 S.Ct. at 3452, and concluded that the statute's restrictions were reasonably related to the Court's purpose. Noting the limited utility in some circumstances of focusing on whether the tangible property is a public forum when a restriction can be upheld as a reasonable time, place or manner restriction, the *Wall* court also applied the more stringent test for a public forum and concluded that the prohibition was constitutional since it was narrowly tailored and served the significant interest of the government in preserving the integrity of the judiciary. 521 A.2d at 1144; *Grace v. Burger*, 214 U.S.App.D.C. 375, 384, 665 F.2d 1193, 1202 (1981) (historically insulated from the political sphere, the purpose of the Court is to entertain arguments "properly ... presented in official pleadings, briefs and memoranda, not on placards."). The two primary purposes of the statute— "to permit unimpeded access and egress of litigants and visitors to the Court, and to preserve the appearance of the Court as a body not swayed by external influence"— were " 'significant' governmental interests that can support a time, place or manner restriction" in a public forum. 521 A.2d at 1144. The court was satisfied, in view of the availability of the municipal sidewalks surrounding the Court, that Wall's right to express his views was not significantly diminished by lack of access to the steps and the plaza of the Court. *Id.* at 1145. These same conclusions would appear to apply to appellants here.

### B.

Appellants contend, however, that recent decisions by the Supreme Court make clear the error of *Wall.* An examination of the decisions on which appellants rely—*Ward v. Rock Against Racism, supra,* 109 S.Ct. at 2758, *Frisby v. Schultz, supra,* 108 S.Ct. at 2503, and *Boos v. Barry, supra,* 485 U.S. 312, 108 S.Ct. 1157—makes patently clear the lack of merit to appellants' contention. These cases continue to rely on the same standards previously announced by the Supreme Court, and to the extent that they reflect any differences, the differences arise from the particular facts in issue and not from a change in law. Indeed, in *Kokinda, supra* note 12, 110 S.Ct. 3115, the Court's most recent First Amendment opinion, the Court has again made clear that *Perry* is the applicable analytical framework, 110 S.Ct. at 3119, 3121, and that the key test in *Grace* continues to be the basis for determining whether a place is a public forum. *Id.* 110 S.Ct. at 3121.

Further, appellants' contention that the term "narrowly-tailored" has been redefined by the Court to require a "least-restrictive analysis" test is explicitly disavowed by the Court in the very cases appellants cite. *Ward v. Rock Against Racism, supra,* 109 S.Ct. at 2757–58 & n. 6. In a nonpublic forum the Court continues to require only that the government's content neutral decision to restrict access be reasonable; "it need not be the most reasonable or the only reasonable limitation." *Kokinda, supra,* 110 S.Ct. at 3122. The *Kokinda* plurality also rejected the notion that because some kinds of speech are allowed it is impermissible to suppress other speech.[15] *Id.* The challenged postal regulation in *Kokinda* prohibited only in-person solicitation for the immediate payment of money, any form of which a majority of the Court viewed as disruptive of the business at hand. *Id.* 110 S.Ct. at 3123, 3124. Thus, a majority of the Court was satisfied that the regulation was narrowly tailored.

In *Ward v. Rock Against Racism, supra,* 109 S.Ct. 2746, the Court upheld a municipal noise regulation for music played in New York City's Central Park band shell requiring performers to use sound system and sound technicians provided by the city. The Court concluded that the regulation

---

**15.** Mr. Justice Kennedy, concurring, observed that "there remains a powerful argument that, because of the wide range of activities that the Government permits to take place on this postal sidewalk, it is more than a nonpublic forum." *Kokinda, supra* note 12, 110 S.Ct. at 3125. Further he acknowledged that "[w]hile it is proper to weigh the need to maintain the dignity and purpose of a public building, ... other factors may point to the conclusion that the Government must permit wider access to the forum than it has otherwise intended." *Id.* (citing *Grace, supra,* 461 U.S. at 182, 103 S.Ct. at 1709).

was narrowly tailored to serve a significant governmental interest in protecting its citizens against unwelcome noise. Directly rejecting appellants' contention in the instant appeal, the Court stated that the "less-restrictive alternative analysis ... has never been a part of the inquiry into the validity of a time, place, and manner exception." 109 S.Ct. at 2757 (quoting *Regan v. Time, Inc.*, 468 U.S. 641, 657, 104 S.Ct. 3262, 3271, 82 L.Ed.2d 487 (1984)).

> Lest any confusion on the point remain, we reaffirm today that a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate content-neutral interests but that it need not be the least-restrictive or least-intrusive means of doing so.

*Id.* 109 S.Ct. at 2757–58 (footnote omitted). Furthermore, the Court pointed out that reliance on *Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988), for a contrary view "ignores a crucial difference between that case and this one" since the regulation invalidated in *Boos* was a content-based ban on display and, therefore, subject to "the most exacting scrutiny." [16] *Id.* 109 S.Ct. at 2758 at n. 6.

Likewise *Frisby* also reflects application of settled, pre-*Wall* standards. *Frisby* involved a city ordinance prohibiting picketing "before or about" any residence, which the Court concluded was "readily subject to a narrowing construction that avoids constitutional difficulties." 108 S.Ct. at 2510 (picketing occurring in front of a particular residence). Addressing the problem created by a complete ban, the Court stated that it may be narrowly tailored only if "each activity within the proscription's scope is an appropriately targeted evil." *Id.* 108 S.Ct. at 2502–03. The Court was persuaded that the ordinance was so narrowed by the circumstances that the picketers banned by the ordinance "generally do not seek to disseminate a message to the general public, but to intrude upon the targeted resident, and to do so in an especially offensive way," that even a solitary picket can invade residential privacy, and the captive audience cannot avoid the objectionable speech. *Id.* 108 S.Ct. at 2503.

Even if appellants were to view the factual settings of these cases as offering some evidence that the Court is retreating from the use of the public forum doctrine to justify limitations on, rather than expansion of, First Amendment freedoms, *see Wall, supra,* 521 A.2d at 1143 n. 5 citing commentary,[17] they offer no basis on which this division can hold that the statute is unconstitutional. In *Wall* the court specifically held that section 13k's prohibition was narrowly drawn to serve two primary interests. 521 A.2d at 1145. Appellants' reference to the statement in *Wall* that the provisions are not "unrelated to the ends that it was designed to serve," *id.* at 1145, as indicating that the court's analysis is no longer viable, omits reference to the court's subsequent statements that the statute does not prohibit all access to the Court grounds by persons not having business there, but only parading, standing or moving in processions or assemblages, and leaves open "ample alternative channels of communication." *Id.* Accordingly, we find no basis on which to conclude that our decision in *Wall* has been vitiated by subsequent Supreme Court decisions, and hence no occasion to alter our analysis that appellants' statutory challenge based on a public forum must fail.

### III

We turn to appellants' overbreadth claim. They contend the trial judge's narrowing construction of section 13k is invalid because that statute is not "readily susceptible" to this interpretation. Specifically they assert that the language of section 13k does not suggest any of the limitations

---

**16.** The regulation at issue in *Boos v. Barry* prohibited any sign within 500 feet of a foreign embassy if the sign tends to bring that foreign government into "public odium" or "public disrepute," and also prohibited congregations (elsewhere defined as groups of more than 3 persons) within 500 feet of any such building or premises. 108 S.Ct. at 1161.

**17.** *See also Kokinda, supra,* 110 S.Ct. at 3127 n. 1 (Brennan, J., dissenting) (commentary criticizing the Court's fora analysis).

articulated by the trial judge. In contending that the statute is overbroad because its terms apply not only to protestors but to any group of attorneys or tourists or Court employees, appellants view the statute as strikingly similar in breath to the municipal airport resolution held to be unconstitutionally overbroad in *Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc. (Airport Comm'rs)*, 482 U.S. 569, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987).

The First Amendment overbreadth doctrine permits an individual whose own speech or conduct may be prohibited to challenge a statute on its face "because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." *Airport Comm'rs, supra,* 482 U.S. at 574, 107 S.Ct. at 2571 (quoting *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 503, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985)). In order to be invalidated for overbreadth, a statute or regulation must proscribe a "substantial amount" of constitutionally protected activity. *Id.* 482 U.S. at 574, 107 S.Ct. at 2571; *New York v. Ferber,* 458 U.S. 747, 769, 102 S.Ct. 3348, 3361, 73 L.Ed.2d 1113 (1982); *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973). Due to the severity of the only remedy for overbreadth, namely, complete invalidation of the regulation or statute, courts have a "duty to avoid constitutional difficulties" by applying an appropriate narrowing construction where possible. *Boos v. Barry, supra,* 108 S.Ct. at 1169 (citing *New York v. Ferber, supra,* 458 U.S. at 769 n. 24, 102 S.Ct. at 336, n. 24; *United States v. Thirty–Seven Photographs,* 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971)). *See Broadrick v. Oklahoma, supra,* 413

U.S. at 613, 93 S.Ct. at 2916. Thus, in *Boos v. Barry,* the Court upheld the site-specific construction of the congregation clause of the regulation—permitting dispersal only of congregations directed at an embassy—as preventing the statute from reaching a substantial amount of constitutionally protected conduct. 108 S.Ct. at 1168.

Section 13k. In a more limited context the Supreme Court examined section 13k for overbreadth in *Grace, supra,* 461 U.S. at 179, 103 S.Ct. at 1708. In that case individuals were prohibited from standing on the sidewalk in front of the Supreme Court building while distributing leaflets and pamphlets to passersby. 461 U.S. at 173, 103 S.Ct. at 1704. The Court held that the inclusion of the perimeter sidewalks in the definition of the Court's geographic boundaries, set for section 13k in 40 U.S.C. § 13p, rendered the statute overly broad. *Id.* at 179, 103 S.Ct. at 1708. The sidewalks surrounding the Court grounds, wrote Justice White, "are indistinguishable from any other sidewalks in Washington, D.C." *Id.* Evaluated as a content-neutral speech restriction in the public sidewalks surrounding the Court grounds, the Court concluded section 13k was an unreasonable time, place, and manner restriction on First Amendment speech activity.

Section 13k is separable into two distinct parts.[18] On its face, the congregation clause, which prohibits parading, standing, and moving in processions and assemblages, prohibits any group activity on the Court's grounds. Thus, as appellants assert, the language prohibits groups of tourists, attorneys or Court employees from standing or moving in "assemblages." Such an absolute ban on any group activity is not supported by the government's legitimate and important interests in protecting the integrity of the Court, preventing the

---

**18.** The trial judge noted in his opinion that it had been represented that the charges against appellants do not involve, and the evidence will not show, the existence of any banners, signs or placards being used. The judge expressly found

that appellants' activities did not fall within the display prohibition of section 13k, and appellants have not contended to the contrary on appeal. Therefore, we address only the parade

appearance of judicial bias,[19] and safeguarding the Court grounds and personnel.[20] The clause is, however, as the trial judge ruled and this court held in *Wall, supra,* susceptible to a narrowing construction, confining the scope of the clause to protection of "the [Supreme Court] building and grounds and of persons and property within, as well as the maintenance of proper order and decorum," *Grace, supra,* 461 U.S. at 182, 103 S.Ct. at 1709, and "to preserve the appearance of the Court as a body not swayed by external influence." *Wall, supra,* 521 A.2d at 1144; *Grace, supra,* 461 U.S. at 183, 103 S.Ct. at 1710.

Appellants misconstrue the Supreme Court's reluctance to narrow the municipal airport ban on First Amendment activity in *Airport Comm'rs.* The language of the section 13k's congregation clause does not create a First Amendment free zone as purportedly established by the airport ban in *Airport Comm'rs, supra,* 107 S.Ct. at 2570.[21] In that case the Court could find no saving construction of "such a sweeping ban," whereby "virtually every individual who enters the [airport] may be found to violate the resolution by engaging in some 'First Amendment activit[y],'" since the words of the resolution "simply leave no room for a narrowing construction." 107 S.Ct. at 2572. Indeed, the Court concluded that it would be "difficult to imagine that the resolution could be limited by anything less than a series of adjudications, and the chilling effect of the resolution on protected speech in the meantime would make such a case-by-case adjudication intolerable." *Id.* It rejected a "murky," open-

ended interpretation, confining the ban to non-airport related activity, as offering little protection against "virtually unrestrained [police] power to arrest and charge persons with a violation of the resolution." *Id.* 107 S.Ct. at 2573.

Although the prohibition in section 13k against congregating on Court grounds is absolute, it is not open in the same manner to the "indefinite number" of interpretations as was the airport resolution, based on the inconvenience of First Amendment activities to airport purposes, struck down by the Court. *Id.* 107 S.Ct. at 2572 (citing, as an example, *Baggett v. Bullitt,* 377 U.S. 360, 378, 84 S.Ct. 1316, 1326, 12 L.Ed.2d 377 (1964) (loyalty oath statute held not susceptible to narrowing construction because numerous potential interpretations of the core language would necessitate extensive future adjudications)). Unlike the elusive government interest underlying the airport ban in *Airport Comm'rs, supra,* the government concern underlying section 13k is readily identifiable and aimed at two types of activity inimical to the Court's functions: demonstrations on Supreme Court grounds and use of those grounds as a forum for voicing private views. The Supreme Court has acknowledged as legitimate and important the government's concern for sheltering and insulating the judiciary from the appearance of political influence. *Cox, supra,* 379 U.S. at 565, 85 S.Ct. at 481. *See Grace, supra,* 461 U.S. at 182–83, 103 S.Ct. at 1709–10; *Greer v. Spock, supra,* 424 U.S. at 839, 96 S.Ct. at 1218 (need to protect nonpolitical govern-

and assemblage provisions of the first clause. See *supra* notes 5 & 6.

19. *See Cornelius, supra,* 473 U.S. at 809, 105 S.Ct. at 3452; *Cox, supra,* 379 U.S. at 565, 85 S.Ct. at 481.

20. Although the impetus for congressional enactment of section 13k, which is part of an eleven section statute addressing the policing of the building and grounds of the Supreme Court, was "termination of the practice by District of Columbia [government] authorities of appointing Supreme Court guards as special policemen for the District [of Columbia]," *Grace, supra,* 461 U.S. at 181, 103 S.Ct. at 1709, the brief legislative history accompanying the statute

does not ignore the unique character of the Court. See H.R.Rep. No. 814, 81st Cong., 1st Sess. 2 (1949) ("in keeping with the dignity of the highest Court in the land, provision should be made for policing of its building and grounds...."); S.Rep. No. 719, 81st Cong., 1st Sess. 2 (1949) (Marshal is authorized to maintain "order and decorum ... [i]n keeping with the dignity which should surround the Supreme Court of the United States and the building and grounds which house it...").

21. The municipal airport ban expressly stated that "the Central Terminal Area at Los Angeles International Airport is not open for First Amendment activities by any individual and/or entity." 107 S.Ct. at 2570.

**358**

ment entities from even the appearance of acting as a handmaiden for partisan political causes). This court could do no less. *Wall, supra,* 521 A.2d at 1144–45. *See also Jeannette Rankin Brigade, supra* note 11, 342 F.Supp. at 584.

Further, there is no requirement that a limiting construction must be derived from the express language of the statute, merely that the statute itself be susceptible to the narrowing construction. The limiting construction adopted by the trial judge, relying on the Supreme Court's interpretation of the statute's legislative history in *Grace, supra,* 461 U.S. at 182, 103 S.Ct. at 1709, is akin to those upheld (albeit under a stricter standard) in *Boos v. Barry, supra,* 108 S.Ct. at 1168 (narrowing construction which permitted dispersals only of congregations that were directed at an embassy alleviated the statute's overbreadth impediment) and in *Frisby, supra,* 108 S.Ct. at 2501 (ban narrowed to picketing in front of a particular residence). Therefore, when limited to group demonstrations directed at the Court which compromise the dignity and decorum of the Court or threaten the Court grounds or its property or personnel, section 13k can withstand an overbreadth challenge because the statute only prohibits group activity which is contrary to the government's legitimate interests. Those interests—protection of the Court building and grounds, and persons and property within, and maintenance of proper order and decorum—are broader than those served by 18 U.S.C. § 1507 (which makes it illegal to demonstrate on public property near a courthouse with the intent to influence court, judges, employees, witnesses), and thus other provisions of law do not serve as an adequate alternative. Such a limiting construction obviously would not prevent attorneys from walking up the steps to the Court or occasional pedestrian use, including reportorial activities, since these activities are substantially different from demonstrations aimed at influencing the Court's decisions.

■ Regulation Two. Regulation Two, a trespass law, codifies the Marshal's in-

herent power to close portions of the Court buildings and grounds to the public.[22] The Marshal, to function, must be given reasonable discretion, and Regulation Two is not unconstitutionally overbroad since it is limited by its stated purpose and the law.

On its face, Regulation Two provides broad authorization to the Marshal to close the Court grounds, thereby prohibiting all activities, protected and unprotected. However, Regulation Two provides that the purpose underlying its promulgation is to permit the Marshal "to protect the Supreme Court building and grounds, to protect the persons and property therein, or to maintain suitable order and decorum." Consequently, the trial judge could properly conclude that Regulation Two did not vest the Marshal with unconstitutionally broad authority to close the Court grounds when limited to situations which threaten the safety of the grounds or employees or the order and decorum required for the dignity of the Court.

In *Ward v. Rock Against Racism, supra,* the Court rejected the claim of invalidity of the congregation clause of a regulation on the ground that "unbridled discretion" was placed in the city officials charged with enforcement, noting that there was no claim that the discretion was unfettered and that "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." 109 S.Ct. at 2755 (citations omitted). Likewise, in *Boos v. Barry, supra,* discretion similar to that vested in the Marshal was vested in the police in connection with congregations around embassies; the Court upheld the congregation clause of the statute, and the police discretion to enforce it, by limiting the authority of the police to order dispersal only when the police reasonably believed that a threat to the security of the embassy was present. 108 S.Ct. at 1167. Similarly, the trial judge's narrowing of the Marshal's authority to close the Supreme Court grounds only when the Marshal reasonably believes that the safety of the Court grounds or employ-

22. *See* 40 U.S.C. § 13c, 13*l*, & 13n.

ees or the order and decorum required for the dignity of the Court are threatened, saves the regulation from proscribing a "substantial amount" of protected activity. So narrowed, we hold that Regulation Two is not unconstitutionally overbroad.[23]

■ Finally, appellants argue that, even as narrowed by the trial judge, section 13k and Regulation Two are unconstitutionally vague. In particular, they assert that the words "order," "decorum," and "dignity" are "inherently ambiguous" so that people of common intelligence could not determine with any degree of confidence whether a particular demonstration would compromise the integrity of the Court.

The "particular context" of the statute and regulation give fair notice of the restrictions on political displays and group activity. *E.g., Boos v. Barry, supra,* 108 S.Ct. at 1169 (construction that police may order dispersal upon reasonable belief that embassy "security or peace" is threatened gives notice in the context of embassy security, namely, whether normal embassy activities have been or are about to be disrupted); *Grayned v. Rockford,* 408 U.S. 104, 107–08, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972) (ordinance prohibiting individuals near schools from "disturb[ing] the peace" of school gave "fair notice" of its scope, namely whether normal school activity has been or is about to be disrupted). The language here may, in some respects, not be as clear cut as that involved when the issue concerns whether normal activity was about to be or had been disrupted. On the other hand, the language is no less clear than that in *Boos v. Barry,* 108 S.Ct. at 1169, and *Grayned v. Rockford,* 408 U.S. at 112, 92 S.Ct. at 2301, where the word "peace" was unsuccessfully attacked as impermissibly vague. The attack failed because the existence of potentially clearer guidelines does not render terms vague. In the context of activities on the Supreme Court grounds, the words "order," "decorum," and "dignity" are readily defined and enjoy their common literal and political definitions, which we have no reason to believe are not commonly and generally understood, particularly where the highest court of the land and the third branch of our government is involved.

In sum, we hold that section 13k, when limited to protection of the Supreme Court building and grounds, and persons and property within, and maintenance of proper order and decorum, and that Regulation Two, with similar limits on the Marshal's power, withstand appellants' constitutional challenges based on the assertions that the Supreme Court plaza is a public forum and that the statute and regulation are overbroad and vague. Accordingly, the judgment is affirmed.

---

23. Even if, as the government suggests in its brief, future challenges to Regulation Two by declaratory or injunctive relief or as a defense to a prosecution lead to further refinement of the scope of the Marshal's authority, such refinements would not invalidate the Marshal's underlying authority or the regulation's purpose. *See Finzer v. Barry,* 255 U.S.App.D.C. 19, 39, 798 F.2d 1450, 1470 (1986), *rev'd on other grounds sub nom., Boos v. Barry, supra,* 108 S.Ct. 1157.