**UNITED STATES, Appellant,**

v.

**Joseph P. WALL, Appellee.**

**No. 85–863.**

District of Columbia Court of Appeals.

Argued April 17, 1986.

Decided March 4, 1987.

---

Michael W. Farrell, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and R. Craig Lawrence and Scott L. Fredericksen, Asst. U.S. Attys., Washington, D.C., were on brief, for appellant.

J. Andrew Chopivsky, Washington, D.C., was on brief, for appellee.

Before NEWMAN, FERREN and BELSON, Associate Judges.

NEWMAN, Associate Judge:

In this appeal we are asked to decide whether the statutory provision making it unlawful to "parade, stand, or move in processions or assemblages in the Supreme Court Building or grounds," 40 U.S.C. § 13k (1982), is unconstitutional as applied to conduct occurring when the Supreme Court is not in session. We hold that both the provision and its application withstand constitutional scrutiny. We reverse the trial court's ruling to the contrary.

I

In January 1985, Joseph P. Wall participated in an anti-abortion demonstration which took place in front of the Supreme Court building. A crowd of approximately 50,000 demonstrators assembled in the street and sidewalk area in front of the Court, carrying placards and bullhorns, and chanting anti-abortion slogans. Eventually, a smaller group of twenty to thirty persons left the sidewalk area and proceeded to the plaza area of the Court, several of them carrying a coffin-shaped box on their shoulders. Upon reaching the plaza, the group ascended the main steps of the Courthouse until they reached a landing area, where they met a line of police officers. Approximately twenty-five feet from the top of the stairs and the front entrance to the Court, the group deposited the "coffin", knelt down, and began praying aloud. Wall was among another group of demonstrators who ascended the steps after the coffin had been deposited; he carried a large placard and knelt down with the rest of the group to pray. A Supreme Court police officer approached the group, and warned them three times that if they did not return to the sidewalk area, they would be arrested for violation of Title 40 of the United States Code. Although many of the participants returned to the sidewalk, Wall and a group of forty others remained kneeling on the stair landing. Following

another warning (to no avail), Wall was arrested along with some forty other protestors.

■ Upon the conclusion of evidence, the trial court made an initial factual determination that Wall's conduct violated 40 U.S.C. § 13k, noting that Wall was "clearly actively, intentionally, knowingly, and willfully involved in a demonstration as defined by the statute and was knowingly taking part ... in it, and did walk up those steps with everyone else, with all of the placards available, and he was carrying a placard himself." Nevertheless, the court proceeded to find Wall not guilty, reasoning that the plaza area and main entrance steps of the Supreme Court constitute a public forum available for the free expression of ideas under the first amendment, so long as the Supreme Court is not in session.[1] Accordingly, the court held that the application of 40 U.S.C. § 13k to Wall's activity would be unconstitutional. The government appeals pursuant to D.C.Code § 23–104(c) (1981).[2]

## II

The underlying premise of the trial court's ruling was that the plaza area and main entrance steps of the Supreme Court constitute a "public forum" for purposes of first amendment analysis. On appeal, the government argues that the area at issue is not a public forum. In the alternative, it contends that, even if the steps and plaza are a public forum, the statute constitutes a reasonable time, place and manner restriction. We agree that section 13k's prohibition on "parad[ing], stand[ing], or mov[ing] in processions or assemblages in the Supreme Court Building or grounds" passes muster under both the standard applicable to nonpublic forums and the test applied to time, place and manner restrictions permissible in public forums. Therefore, we do not find it necessary to decide in this case whether or not the Supreme Court's main entrance steps and plaza area comprise a public forum for purposes of first amendment scrutiny.[3]

1. The trial court had not been presented with any evidence that the Supreme Court was in session, i.e., hearing oral argument at time of the demonstration, and it did not decide whether the statute would have been constitutional if applied under such circumstances.

2. D.C.Code § 23–104(c) (1981) permits the United States to appeal an order "terminating a prosecution in favor of a defendant ..., except where there is an acquittal on the merits." Since our rendering an opinion on the constitutionality of 40 U.S.C. § 13k (1982) will not require a retrial prohibited by the double jeopardy clause, this appeal is properly before us. *See United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975).

3. We also decline to decide whether the second clause of 40 U.S.C. § 13k (1982) similarly withstands a first amendment challenge when applied to expressive activity occurring within the main entrance steps and plaza area of the Supreme Court grounds. 40 U.S.C. § 13k provides in full: "It shall be unlawful to parade, stand, or move in processions or assemblages in the Supreme Court Building or grounds, *or to display therein any flag, banner, or device designed or adapted to bring into public notice any party, organization, or movement."* (Emphasis added.) In *United States v. Grace*, 461 U.S. 171, 175, 103 S.Ct. 1702, 1705, 75 L.Ed.2d 736 (1983), the Supreme Court held that the two clauses of 40

U.S.C. § 13k are severable. *See generally Gary v. United States*, 499 A.2d 815, 821 (D.C.1985) (statute is severable unless it is evident that without the provision at issue Congress would not have enacted the remaining provisions), *cert. denied,* —— U.S. ——, 106 S.Ct. 3279, 91 L.Ed.2d 568 (1986); *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919, 931–32, 103 S.Ct. 2764, 2773–74, 77 L.Ed.2d 317 (1983).

In *Grace*, each appellee had appeared individually to engage in expressive activity. Hence, the Supreme Court concluded that each had been in violation of the second clause of the statute, and limited its holding accordingly. *Grace, supra,* 461 U.S. at 175, 103 S.Ct. at 1705. In this case, the trial court's findings support its conclusion that Joseph Wall was "involved in a demonstration." *See supra* p. 1142. Because his conviction therefore can be upheld under the first clause of 40 U.S.C. § 13k, which prohibits processions and assemblages, we need not reach the question—reserved in *Grace,* 461 U.S. at 178–79, 103 S.Ct. at 1707–08,—of whether the second clause, which prohibits the display of any flag, banner or device, similarly would withstand constitutional scrutiny if applied to the plaza and main entrance steps. *Grace* held the "display ... any flag, banner, or device" clause unconstitutional as applied to the sidewalks surrounding the Court, based on its analysis that these sidewalks—like sidewalks generally—are traditional public forums. 461 U.S. at 179–80, 103 S.Ct. at 1708. In his opinion, con-

■ The Supreme Court has held that "[t]he existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983). The Court has developed a tripartite division of governmental property, while simultaneously recognizing that the types of property in fact comprise a "spectrum." *Id.* at 45, 103 S.Ct. at 954. At one end of the spectrum are streets and parks, the "quintessential public forums." *Id.*[4] In these quintessential public forums, the state may enforce content-based regulations only if they are narrowly drawn to serve a compelling governmental interest. Content-neutral restrictions on the time, place and manner of expression, are permissible if they are narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels of communication. *Id.*

■ A second category of governmental property is property that, while not a public forum by tradition, has been designated a public forum by governmental action, usually for some limited purpose. *See, e.g., Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (meeting facilities provided by state university for use by student groups). In these "limited public forums," or "public forums by designation," the government is bound by the same standards that apply in traditional public forums. However, the government is not required to retain the open character of the property indefinitely. *Perry, supra*, 460 U.S. at 46, 103 S.Ct. at 955.

■ The third and residual category encompasses governmental property that is not a public forum either by tradition or by designation. *See, e.g., Perry, supra*, 460 U.S. at 46–48, 103 S.Ct. at 955–56 (interschool mail system); *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 105 S.Ct. 3439, 3450–51, 87 L.Ed.2d 567 (1985) (Combined Federal Campaign federal employees' charity drive). Regulation of expression in these "nonpublic forums" is permissible so long as the regulation is both reasonable and not an effort to suppress the speaker's point of view.[5] Time, place and manner restrictions may also be applied to nonpublic forums. *See Perry, supra*, 460 U.S. at 46, 103 S.Ct. at 955.

While the standards for evaluating regulations on expression in the three types of forums are relatively clear, those for determining which type of forum describes a particular parcel of public property have been less brightly drawn. *See* Cass, *supra* note 4, at 1301–08; Note, *supra* note 4, at

---

curring in part and dissenting in part, Justice Marshall expressed the view that the "display" clause is facially unconstitutional, wherever applied, as an overbroad prohibition on expressive activity that might sweep within its reach, for example, such unobtrusive activity as the wearing of a campaign button. *See Grace, supra*, 461 U.S. at 186–87, 103 S.Ct. at 1711–12 (Marshall, J., concurring in part and dissenting in part).

4. The classic statement of the quintessential public forum was given by Justice Roberts in *Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939):

Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens.

Public forum analysis, as a formula for applying different standards to governmental regulation depending upon the nature of the governmental property, is of much more recent vintage, however. Not until the 1970's did public forum doctrine begin to be used to justify limitations on, rather than expansion of, first amendment freedoms. *See* Note, A *Unitary Approach to Claims of First Amendment Access to Publicly Owned Property*, 35 Stan.L.Rev. 121, 123–24 (1982); Cass, *First Amendment Access to Government Facilities*, 65 Va.L.Rev. 1287, 1301 (1979); Farber & Nowak, *The Misleading Nature of Public Forum Analysis: Content and Context in First Amendment Adjudication*, 70 Va.L.Rev. 1219, 1221–22 (1984).

5. The concept of a nonpublic forum implies a right to make distinctions in access on the basis of subject matter and speaker identity. These distinctions are permissible if they are reasonable in light of the purpose which the forum serves. *Perry, supra*, 460 U.S. at 49, 103 S.Ct. at 957.

135–39. In determining whether government property has become a public forum by designation, the Court has suggested that it will consider whether the principal function of the property would be disrupted by excessive activity. *Cornelius, supra,* 105 S.Ct. at 3451. Hence, the Court may make a preliminary inquiry into the compatibility between the nature of the property and the type of expression that the government is seeking to regulate. *Id.* at 3449. It is perhaps for this reason that the Court has observed that "the analytical line between a regulation of the 'time, place, and manner' in which First Amendment rights may be exercised in a traditional public forum, and the question of whether a particular piece of personal or real property owned or controlled by the government is in fact a 'public forum' may blur at the edges...." *United States Postal Service v. Council of Greenburgh Civic Associations,* 453 U.S. 114, 132, 101 S.Ct. 2676, 2686, 69 L.Ed.2d 517 (1981).

The difficulty of distinguishing between the categorization of the forum and the legitimacy of the regulation is especially acute in cases "falling between the paradigms of government property interests essentially mirroring analogous private interests and those clearly held in trust, either by tradition or recent convention, for the use of citizens at large." *Members of the City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 815 n. 32, 104 S.Ct. 2118, 2134 n. 32, 80 L.Ed.2d 772 (1984). Thus, the Court has recognized that in some cases it may be "of limited utility ... to focus on whether the tangible property itself should be deemed a public forum." *Id.* When a regulation can be upheld as a time, place or manner restriction, the Court has not always found it necessary to consider to which type of forum the regulation is being applied. *See, e.g., Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984) (upholding ban on sleeping in Lafayette Park and national

Mall area as permissible time, place, and manner restriction on demonstration, without noting the nature of the forum).

### III

 We believe that 40 U.S.C. § 13k's prohibition on processions and assemblages in the plaza area and main entrance steps of the Supreme Court is reasonable and viewpoint-neutral, and, therefore, meets the test imposed on exclusion of speakers from nonpublic forums. We also believe that the prohibition meets the more stringent test applicable to a time, place and manner restriction that may be imposed even in a public forum: that it be narrowly drawn to serve a significant governmental interest, that it be content-neutral, and that it leave open ample alternative channels of communication.

The government argues that there are two primary purposes for the statutory provision at issue here: to permit the unimpeded access and egress of litigants and visitors to the Court, and to preserve the appearance of the Court as a body not swayed by external influence.[6] We are satisfied that these are "significant" governmental interests that can support a time, place or manner restriction. In *Cameron v. Johnson,* 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968), the Supreme Court upheld a state statute restricting persons singly or in groups from conducting picketing or mass demonstrations that obstruct or unreasonably interfere with ingress or egress from courthouses and other public buildings. In *Cox v. Louisiana,* 379 U.S. 559, 562, 85 S.Ct. 476, 479, 13 L.Ed.2d 487 (1965), the Court held that a state may adopt necessary safeguards to assure that the administration of justice is free from outside control and influence. *Cox* upheld a statute prohibiting picketing in or near a courthouse when done with the intent of influencing the administration of justice. We believe that preventing the

---

**6.** The provisions and legislative history of the Act of which section 13k is a part suggest that the purpose of the Act was to provide for the protection of the building and grounds of the Supreme Court, and of persons and property therein, as well as to maintain proper order and decorum. *Grace, supra,* 461 U.S. at 182, 103 S.Ct. at 1709.

appearance of such influence is also a significant governmental interest.[7]

Furthermore, the prohibition is narrowly drawn to serve the interests that the government has articulated. None of its provisions appears unrelated to the ends that it was designed to serve. *Clark, supra,* 468 U.S. at 297, 104 S.Ct. at 3070. It does not prohibit all access to the Supreme Court grounds by persons not having business there. Rather, it prohibits only "parad[ing], stand[ing], or mov[ing] in processions or assemblages" therein. The statutory provision is also entirely content-neutral on its face, and there is no evidence in the record that it has been applied in a discriminatory manner.

In addition, by prohibiting processions and assemblages in the plaza and main entrance steps, the statute leaves open ample alternative channels of communication. The record reflects that Wall and the larger group of which he was a part, numbering some 50,000 persons, had been permitted to carry placards and chant slogans as long as they remained on the sidewalk and in the street in front of the Court. Hence, the demonstrators' message could be, and indeed was, communicated in other ways. *See Clark, supra,* 468 U.S. at 295, 104 S.Ct. at 3069.

■ Finally, we address the trial court's conclusion that the restrictions at issue are unconstitutional as applied to Wall because they were applied when the Court was not in session. We cannot agree that the governmental interests that undergird the restriction are significantly diminished when the Justices are not actually hearing oral argument. The danger of the appearance of outside influence upon the Court is ever present. Furthermore, the building remains open for business even when oral arguments are not taking place, supporting the need to maintain the main entrance steps and plaza area clear of processions and assemblages.

Accordingly, we hold that the first clause of 40 U.S.C. § 13k, making it unlawful to "parade, stand, or move in processions or assemblages in the Supreme Court Building or grounds," is a constitutionally valid restriction on expression. The statutory provision's validity is not undermined when, as in this case, it is applied to conduct occurring when the Court is not in session.

*Reversed and remanded for entry of an order consistent with this opinion.*

FERREN, Associate Judge, concurring in the result:

I concur in the result but not in the opinion of the court. Given the criteria announced in *Perry Education Association v. Perry Local Educators' Association,* 460 U.S. 37, 45–47, 103 S.Ct. 948, 954–956, 74 L.Ed.2d 794 (1983), I conclude that the plaza area and main entrance steps of the Supreme Court comprise a "nonpublic forum," *id.* at 49, 103 S.Ct. at 959, since those areas—on the record before us—are "[p]ublic property which is not by tradition or designation a forum for public communication." *Id.* at 46, 103 S.Ct. at 957. On this premise, I agree with my colleagues that the first clause of 40 U.S.C. § 13k (1982), making it unlawful to "parade, stand, or move in processessions or assemblages in the Supreme Court Building or grounds," is not unconstitutional. In denying everyone the right to engage in "processions or assemblages" in and around the Court, the statute is reasonable, *see, e.g., Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), and does not discriminate against persons attempting to

---

7. For this reason, regulation of expression outside a courthouse may be permissible where the same regulation applied to the grounds surrounding a legislature would not be. In *Jeannette Rankin Brigade v. Chief of Capitol Police,* 342 F.Supp. 575 (D.D.C.), *aff'd mem.,* 409 U.S. 972, 93 S.Ct. 311, 34 L.Ed.2d 236 (1972), the United States District Court invalidated 40 U.S.C. § 193g, the counterpart statute to 40 U.S.C. § 13k, governing the United States Capitol grounds. The court distinguished the unique function of the judicial branch to render decisions free from the pressures of popular opinion. By contrast, explained the court, the "fundamental function of a legislature in a democratic society assumes accessibility to such opinion." 342 F.Supp. at 584. *See also Edwards v. South Carolina,* 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963).

express a particular point of view. *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 105 S.Ct. 3439, 3451, 87 L.Ed.2d 567 (1985); *Perry Education Association*, 460 U.S. at 46, 103 S.Ct. at 955.

If, however, the plaza area and main steps of the Supreme Court were a traditional public forum, as the majority assumes it may be, I am not prepared to say that the blanket prohibition against processions or assemblages, while "content-neutral," amounts to "reasonable time, place, and manner regulations" that "are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *United States v. Grace*, 461 U.S. 171, 177, 103 S.Ct. 1702, 1706, 75 L.Ed.2d 736 (1983) (quoting *Perry Education Association*, 460 U.S. at 45, 103 S.Ct. at 954).