Mitchell N. POTTS, Peter J. Perry, and
David H. Barrows, Appellants,

v.

UNITED STATES, Appellee.

Nos. 05–CM–781, 05–CM–
867, 05–CM–928.

District of Columbia Court of Appeals.

Argued Jan. 23, 2007.

Decided Jan. 30, 2007.[*]

---

[*] The decision in these consolidated appeals originally was released as an unpublished Memorandum Opinion and Judgment. On motion of appellee filed February 28, 2007, we now reissue the opinion for publication.

William G. Dansie, with whom Betty J. Clark was on the brief, for appellant Potts.

William F.X. Becker, was on the brief, Rockville, Maryland, for appellant Perry.

Mark L. Goldstone, was on the brief, Bethesda, Maryland, for appellant Barrows.

Nicholas P. Coleman, Assistant United States Attorney, with whom Kenneth L.

Wainstein, United States Attorney at the time, and Roy W. McLeese III, Assistant United States Attorney, were on the brief, for appellee.

Before GLICKMAN, KRAMER and BLACKBURNE–RIGSBY, Associate Judges.

GLICKMAN, Associate Judge.

Appellants ask us to reverse their convictions after a bench trial of violating 40 U.S.C. § 6135 by displaying, on the Supreme Court grounds, a banner or device "designed or adapted to bring into public notice a party, organization, or movement." Appellants challenge the jurisdiction of the Superior Court, the Constitutionality of the statute on its face and as applied to them, and the factual findings of the trial court. We reject appellants' arguments and affirm their convictions.

Appellants were at the Supreme Court on February 9, 2005, as part of a small group protesting the mistreatment of prisoners at the Abu Ghraib and Guantanamo Bay prisons and the appointment of Alberto Gonzales as Attorney General. To dramatize their cause, appellant Potts was wearing a black hood; appellant Barrows was wearing an orange jumpsuit and black hood; and appellant Perry was holding a sign over his head that read "no taxes for war or torture." In the course of the protest, appellants ascended several steps from the sidewalk to the plaza in front of the Supreme Court building. Supreme Court Police repeatedly asked appellants to return to the sidewalk and arrested them when they refused to do so.

■ As to jurisdiction, 40 U.S.C. § 6137(b) expressly provides that violations of 40 U.S.C. § 6135 may be prosecuted in Superior Court as well as in United States District Court. The intent of Congress to authorize prosecutions in Superior Court is clear, and we attach no significance to the fact that the heading of

§ 6137 (which was added in a 2002 recodification that left the text of the statute unchanged) refers to venue rather than to jurisdiction. In point of fact, D.C.Code § 11–923(b)(1) (2001) provides that "the Superior Court has jurisdiction of any criminal case under any law applicable exclusively to the District of Columbia;" by regulating only behavior on the Supreme Court grounds, 40 U.S.C. § 6135 is such a law.

■ Next, 40 U.S.C. § 6135 does not violate the First Amendment, either on its face or as applied to appellants. We have held, contrary to appellants' contention, that "the Supreme Court plaza is a non-public forum." *Bonowitz v. United States,* 741 A.2d 18, 22 (D.C.1999). As such, "the government can regulate speech [there] 'as long as the restrictions are reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Id.* at 21 (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund,* 473 U.S. 788, 802, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). Both of those conditions are met in this case. The statutory restriction on expression at issue here is reasonable as a measure "to permit the unimpeded access and egress of litigants and visitors to the Court, and to preserve the appearance of the Court as a body not swayed by external influence." *United States v. Wall,* 521 A.2d 1140, 1144 (D.C. 1987); *see also United States v. Grace,* 461 U.S. 171, 182–83, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). The general restriction is reasonable, and reasonably applied to appellants, even if they could show that their particular conduct did not threaten the harms sought to be avoided. *See Ward v. Rock Against Racism,* 491 U.S. 781, 801, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) ("[T]he validity of the regulation depends on the relation it bears to the overall problem the government seeks to

correct, not on the extent to which it furthers the government's interests in an individual case."). Moreover, the statute is viewpoint-neutral on its face, and there is no evidence that it was applied to appellants in a discriminatory manner.[1]

■ We likewise reject appellants' claim that the "display" clause of 40 U.S.C. § 6135 is unconstitutionally vague.[2] The Supreme Court's decision in *Grace*, coupled with the plain text of the statute, makes it clear that protestors may not demonstrate on the Supreme Court steps and plaza. Appellants' primary claim, that the term "movement" in 40 U.S.C. § 6135 is impermissibly vague because it may be applied both to large, established political organizations and small, *ad hoc* groups of protestors who converge for a single occasion, is unconvincing. In context, juxtaposed with the words "party" and "organization," the term "movement" is not unduly vague; it encompasses any person or group seeking to advocate a cause or message. The breadth of this definition, which does not turn on the size, structure or other arbitrary characteristics of the demonstrators or their cause, avoids rather than threatens the dangers of uncertain, arbitrary or discriminatory application and enforcement. Thus, in *Grace*, the statute was challenged by solitary protestors, one who merely displayed a sign with the text of the First Amendment, and the other who merely distributed leaflets concerning oppression in Guatemala. The Supreme Court agreed "that almost any sign or leaflet carrying a communication, including Grace's picket sign and Zywicki's leaflets, would be 'designed or adapted to bring into public notice [a] party, organization or movement,'" noting that "[s]uch a construction brings some certainty to the reach of the statute and hence avoids what might be other challenges to its validity." 461 U.S. at 176, 103 S.Ct. 1702.

■ Finally, the trial court did not misconstrue the statute or clearly err in finding that appellants' costumes—the orange jumpsuit and the blackhood—constituted "devices[s] designed or adapted to bring into public notice" a "movement." Merely because some distinctive clothing, such as religious attire, is not worn to promote a cause or position, does not mean that a garment cannot be a "device" within the coverage of 40 U.S.C. § 6135. Whether appellants' display was expressive conduct to which the statute applied turned on whether an "intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). In this case, the answer to those questions is not in doubt. Indeed, appellants themselves testified that they intended to

---

1. Nor does the "display" clause of 40 U.S.C. § 6135 suffer from overbreadth. "In order to be invalidated for overbreadth, a statute or regulation must proscribe a 'substantial amount' of constitutionally protected activity." *Pearson v. United States*, 581 A.2d 347, 356 (D.C.1990) (quoting *Bd. of Airport Comm'rs of Los Angeles v. Jews for Jesus*, 482 U.S. 569, 574, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987)). In *Grace*, the Supreme Court secured the statute from being overly broad by holding it not to apply to the public sidewalks surrounding the Court grounds. Furthermore, by limiting its curtailment of speech on

Court grounds to the advocacy of causes or positions, the "display" clause minimizes the risk of restricting expressive activity outside the ambit of the government's legitimate interests. For example, the statute does not operate to prohibit news conferences concerning cases before the Court. *See Bonowitz*, 741 A.2d at 22–23; *see also Grace*, 461 U.S. at 181 n. 10, 103 S.Ct. 1702.

2. We previously rejected other vagueness challenges to the statute in *Bonowitz*, 741 A.2d at 23–24 n. 6, and in *Pearson*, 581 A.2d at 359.

symbolize their disgust with the current Administration's alleged complicity with torture and with the appointment of Mr. Gonzales.[3]

Appellants' convictions are hereby *Affirmed.*

**3.** Appellants Perry and Barrows contend that the trial court clearly erred in finding that they had sufficient time to comply with the police directive to leave the plaza to avoid arrest. This contention is without merit. In the first place, the issue is immaterial; since the statute was not vague, but gave appellants fair warning that their conduct was prohibited, they were not entitled to other warnings. In any event, however, the testimony at trial supported the court's findings. The police gave repeated warnings, and both Barrows and Perry acknowledged that they refused to comply because they believed they had a right to remain where they were.